J-A25023-15

2015 PA Super 210

| IN THE INTEREST OF: C.L.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: F.M.P. AND P.T.A., MATERNAL GRANDPARENTS | No. 42 EDA 2015 |

Appeal from the Order Entered November 21, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): CP-51-DP-0002355-2013
CP-51-FN-004529-2013

| IN THE INTEREST OF: G.L.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: F.M.P. AND P.T.A., MATERNAL GRANDPARENTS | No. 43 EDA 2015 |

Appeal from the Order Entered November 21, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): CP-51-DP-0002361-2013
CP-51-FN-004529-2013

BEFORE:  DONOHUE, J., MUNDY, J., and FITZGERALD, J.[*]

OPINION BY MUNDY, J.:                          **FILED OCTOBER 02, 2015**

_____

[*] Former Justice specially assigned to the Superior Court.

Appellants, F.M.P. (Maternal Grandfather) and P.T.A. (Maternal Grandmother), (collectively, Grandparents) appeal from the November 21, 2014 order denying, *inter alia*, their motion to schedule a custody trial pursuant to Pennsylvania Rule of Civil Procedure 1915.4, with respect to their grandsons, G.L.P. and C.L.P., who are adjudicated dependent pursuant to 42 Pa.C.S.A. § 6302. After careful review, we reverse and remand for further proceedings.

The factual background of this case, as gleaned from the certified record, is as follows. In November 2013, G.L.P., who was then five-months-old, and C.L.P., who was then three-years-old, were removed from their biological parents, G.P.T. (Mother) and C.L.R. (Father), and placed in the custody of the Philadelphia Department of Human Services, Children and Youth Division (DHS), following a non-accidental trauma suffered by G.L.P. *See* Trial Court Opinion, 5/18/15, at 1-2. A physician at the Children's Hospital of Philadelphia, where G.L.P. was treated, certified his injury as a near-fatality. *Id.* at 2.

On March 24, 2014, the trial court adjudicated G.L.P. and C.L.P. dependent. In addition, the trial court issued an aggravating circumstances order with respect to G.L.P. and C.L.P. stating that "[t]he Child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury[,] sexual violence[,] or aggravated neglect by the parent; proven as to Mother and Father." Trial Court Order, 3/24/14, at 1.

Nevertheless, the trial court directed DHS to provide reunification services for the family. *Id.* Since their placement, G.L.P. and C.L.P. have been in foster care through Catholic Social Services.

On June 19, 2014, Grandparents filed a complaint for custody against Mother, Father, and DHS, wherein they asserted they had standing to seek custody of G.L.P. and C.L.P. pursuant to Section 5324(3) of the Custody Act, 23 Pa.C.S. §§ 5321-5340. On the same date, Grandparents filed a motion to intervene, wherein they requested that the trial court schedule a custody hearing or, alternatively, "grant[] them permission to participate in the dependency proceedings naming them as the care alternative which is the least restrictive for the boys." Motion to Intervene, 6/19/14, at ¶ 19.

Thereafter, the certified record reveals that, by a July 30, 2014 permanency review order, the trial court directed DHS to explore Grandparents as possible resources, and to schedule supervised visitation between Grandparents, G.L.P., and C.L.P., upon receipt of criminal clearances for Grandparents.[1] By permanency review order dated August 21, 2014, the trial court directed Grandparents to submit a brief within 30 days concerning whether the trial court has jurisdiction to hear the custody

---

[1] By a permanency review order dated October 31, 2014, the trial court directed the parties to arrange supervised weekly visits between Grandparents and their grandsons.

matter.  On October 28, 2014, Grandparents filed a motion to schedule a custody trial pursuant to Pa.R.C.P. 1915.4.

An oral argument on Grandparents' motions occurred on November 21, 2014, during which counsel for DHS, Mother, Father, and Grandparents participated, along with the Child Advocate.  Counsel for Grandparents explained to the trial court that the motion to intervene, filed concurrently with the custody complaint on June 19, 2014, "was nothing more than a vehicle to request a trial date under Pennsylvania Rule of Civil Procedure 1915.4.  It [was] never intended to be a motion to intervene in dependency."  N.T., 11/21/14, at 11.  As such, counsel for Grandparents acknowledged to the trial court that Grandparents do not have standing in the dependency action. *Id.* at 62.

At the conclusion of the oral argument, the trial court, on the record, denied Grandparents' motion to intervene, and further stated that the court will not entertain the custody complaint or the motion to schedule a custody trial because Grandparents do not have legal standing.  *Id.* at 69-70, 75. The trial court explained on the record that Section 5324 confers legal standing upon grandparents of dependent children "when the parents['] rights either [have] been terminated or the parent is deceased, or the parent is in no position to become a parent, which is different from this case, because …  the parents right now … I believe they're fully compliant [with their Family Service Plan objectives.]" *Id.* at 29.  By order dated November

21, 2014, the trial court denied Grandparents' motion to intervene. In addition, the order stated that Grandparents "were ruled out as possible kinship parents."[2] Trial Court Order, 11/21/14, at 1.

On December 18, 2014, Grandparents filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), which this Court consolidated by stipulation of the parties. The trial court issued a Rule 1925(a) opinion on May 18, 2015.[3]

On appeal, Grandparents present three issues for our review.

> A. Whether it was an error of law for the trial court to refuse to schedule a trial on the Grandparents' Complaint for Custody where the subject grandchildren had been adjudicated dependent by the trial court, such adjudication triggering the Grandparents' standing to file a complaint for custody pursuant to 23 Pa.C.S.A. § 5324, and such filing requiring the scheduling of a trial pursuant to [Pa.R.C.P.] 1915.4[?]

_____

[2] During the oral argument on November 21, 2014, counsel for DHS advised the trial court that Grandparents have been ruled out as a kinship resource for G.L.P. and C.L.P. because of an allegation that one or both of them may have been caring for G.L.P. at the time of his injury. **See** N.T., 11/21/14, at 17, 20-21.

[3] The Child Advocate argues in its appellee brief that we should dismiss this appeal because the subject order did not dismiss or deny the custody complaint. We reject this argument because the motion to intervene, which the court denied, included a request to schedule a child custody hearing. In addition, the trial court ruled on the record that it will not act on the motion to schedule a custody trial because Grandparents do not have legal standing. N.T., 11/21/14, at 69-70, 75. We deem this to be, in effect, a dismissal of their custody complaint. Therefore, we conclude that this appeal is properly before us, and we will review it on its merits.

B. Whether it was an error of law and abuse of discretion for the trial court to find that the Grandparents' Complaint for Custody could not be heard while reunification with the parents was being considered via the Juvenile Act[,] 42 Pa.C.S.A. § 6301 *et seq.*, which it determined to supersede the statutory mandate of 23 Pa.C.S.A. § 5324, when the plain language of 23 Pa.C.S.A. § 5324 imposes no such requirement, nor does case[]law interpreting it[?]

C. Whether it was an error of law for the trial court to conclude that any grant of custody to Grandparents via the Custody Act, including temporary custody which is an option within the Juvenile Act[,] 42 Pa.C.S.A. § 6351(a), and the Custody Act, 23 Pa.C.S.A. § 5323(b), would be impermissible, contrary to the parents' prima facie rights and frustrate the goal of family unity within the Juvenile Act while reunification with the parents is being explored[?]

Grandparents' brief at 3-4.

The crux of Grandparents' arguments on appeal is that they have standing to seek custody of their dependent grandsons pursuant to Section 5324(3) of the Custody Act, notwithstanding the permanency goals of reunification under the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6375. Section 5324 provides as follows.

**§ 5324. Standing for any form of physical custody or legal custody.**

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

…

(3) A grandparent of the child who is not in loco parentis to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) The child has for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. § 5324(3). Specifically, Grandparents assert that they have standing to seek custody of G.L.P. and C.L.P. pursuant to Section 5324(3)(iii)(A).[4]

We begin by observing that "the interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. As with all questions of law, the appellate standard of review is de novo and the appellate scope of review is plenary." **B.K.M. v. J.A.M.**, 50 A.3d 168, 172 (Pa. Super. 2012) (citations and internal quotation marks omitted).

> "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its

---

[4] Neither DHS, Mother, nor Father filed an appellee brief in this appeal. The Child Advocate asserts in its brief that the trial court did not commit an error of law. The Child Advocate asserts that Grandparents do not have standing to intervene in the dependency matter pursuant to the Juvenile Act. We deem this argument irrelevant because the issue in this case is whether Grandparents may file a child custody action concurrent to the dependency actions pending with respect to their grandsons. Indeed, Grandparents expressly stated that they are not seeking to intervene in the dependency matters, as they agree they do not have standing to intervene under the Juvenile Act. **See** N.T., 11/21/14, at 11, 62. Next, the Child Advocate asserts that Section 5324 "appears to give the grandparents the right to file a petition for custody when their grandchildren have been adjudicated dependent, [but] it does not indicate how and when that petition should be heard in light of Juvenile Act's hierarchy of permanency goals." Child Advocate Brief at 24. The Child Advocate then asserts that the trial court found it premature to list the custody complaint for trial because the permanency goals for the family remained reunification, and, in so doing, the court gave effect to both the Custody Act and the Juvenile Act. We reject this argument for reasons explained fully below.

provisions." 1 Pa.C.S. § 1921(a). The plain language of the statute is generally the best indicator of legislative intent, ***Commonwealth v. McCoy***, 962 A.2d 1160, 1166 (Pa. 2009), and the words of a statute "shall be construed according to rules of grammar and according to their common and approved usage …." 1 Pa.C.S. § 1903(a). We generally look beyond the plain language of the statute only where the words are unclear or ambiguous, or the plain meaning would lead to "a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922; ***see also Commonwealth v. Diodoro***, 970 A.2d 1100, 1106 (Pa. 2009).

***Commonwealth v. Garzone***, 34 A.3d 67, 75 (Pa. 2012) (parallel citations omitted).

Instantly, in its Rule 1925(a) opinion, the trial court reasoned as follows.

[O]nly in exceptional cases has Pennsylvania case law recognized grandparents' standing in custody actions in the Domestic Relations Court when grandchildren have been adjudicated dependent by a court in a dependency action. Specifically only in cases, [sic] family's unity preservation is not viable. Namely, when the permanency goal has been changed to adoption or parental rights have been terminated. In ***In re Ado[p]tion of Hess***, 608 A.2d [12] (Pa. 1992), the Pennsylvania Supreme Court recognized standing to grandparents that filed a custody complaint at the adoption proceeding after the parents voluntarily relinquished their parental rights. [ ] In ***R.M. v. Baxter***, 777 A.2d 446 (Pa. 1999), the paternal grandmother had standing to file a custody action after the child was adjudicated dependent and the permanency goal was changed to adoption. ….

[In this case,] [t]he FSP [Family Service Plan] goal for both parents is still reunification, and parents have been fully compliant with their FSP goals …,

- 9 -

> and despite the trial court finding of aggravated circumstances, DHS was ordered to continue with reasonable efforts for [G.L.P.'s and C.L.P.'s] reunification with their parents…. The Grandparents' rights under the Custody Act cannot trump the status of [G.L.P.'s and C.L.P.'s] biological parents, who have a prima facie right to custody. Parents' rights have not been terminated and are fully compliant. The Grandparents also admitted that they do not have standing to participate in the dependency action; therefore, their Motion to Intervene had to be denied. Consequently, the trial court did not have to hear the custody petition filed by Grandparents.

Trial Court Opinion, 5/18/15, at 8-9. We conclude the trial court erred for the following reasons.

The case authority cited by the trial court is inapposite to this matter. First, in **Hess**, our Supreme Court interpreted the Adoption Act, 23 Pa.C.S. §§ 2101 *et seq*., to permit grandparents to intervene in their grandchildren's adoption proceedings after the parental rights of the children's mother and father were terminated. In this case, Grandparents are not seeking to intervene in adoption proceedings. Indeed, the certified record indicates that there are no pending adoption proceedings as the parental rights of Mother and Father have not been terminated. Rather, Grandparents seek a hearing on their concurrent custody action under the Custody Act with respect to their dependent grandsons. As such, the Custody Act, and not the Adoption Act, is applicable in this case. Therefore, we conclude that **Hess** is not controlling in this matter.

Second, in *R.M.*, our Supreme Court held that 23 Pa.C.S.A. § 5313(b), the predecessor to Section 5324(3)(iii), conferred automatic standing upon a grandparent to seek physical and legal custody of a grandchild after the child has been adjudicated dependent. However, Section 5313(b) was superseded by Section 5324(3)(iii) on January 24, 2011. This provision provides that, to have standing to seek physical and legal custody, a grandparent who is not *in loco parentis* to the child[5] must establish one of the three circumstances set forth in Section 5324(3)(iii)(A)-(C). *See D.G. v. D.B.*, 91 A.3d 706, 712 (Pa. Super. 2014) (stating, "[u]nder § 5324(3)(iii), a grandparent must establish one of the three circumstances set forth in subsections (A) through (C) in order to have standing to seek custody") (emphasis omitted). Therefore, unlike the former Section 5313(b), Section 5324(3)(iii) does not confer automatic standing upon a grandparent to seek physical and legal custody of a grandchild.

Section 5324(3)(iii)(A) confers standing upon grandparents in cases where "the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters)," when the requirements of

---

[5] "The phrase '*in loco parentis*' refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption." *T.B. v. L.R.M.*, 786 A.2d 913, 916 (Pa. 2001).

Section 5324(3)(i) and (ii) are also met.[6]  23 Pa.C.S. § 5324(3)(iii)(A).  The words of this provision are clear and unambiguous, and they do not impose the limitation construed by the trial court.  Thus, we reject the trial court's conclusion that "the Custody Act cannot trump the status of [G.L.P.'s and C.L.P.'s] biological parents, who have a prima facie right to custody."  Trial Court Opinion, 5/18/15, at 9.  Such an interpretation, that a grandparent does not have standing to seek custody of a grandchild determined to be a dependent and having a goal of reunification with his biological parents under the Juvenile Act, is contrary to the plain language of Section 5324(3)(iii)(A), by which we are to ascertain our General Assembly's intent.[7]  **_See Garzone_**, **_supra_**.

Therefore, the Custody Act grants standing to grandparents to file for any form of physical or legal custody when their grandchild has been adjudicated dependent notwithstanding a permanency goal of reunification.  As such, we conclude that the trial court erred as a matter of law in failing to list Grandparents' custody action for a hearing pursuant to Grandparents'

_____

[6] In this case, it is undisputed that Grandparents' relationship with G.L.P. and C.L.P. began with the consent of the parents, and that Grandparents are willing to assume responsibility for their dependent grandsons.  **_See_** 23 Pa.C.S. § 5324(3)(i)-(ii).

[7] Any implications concerning the children's reunification goals could pertain to the merits of the instant custody complaint, upon which we express no opinion.  However, they do not negate the Grandparents' standing, which, as we have explained, is controlled by the plain text of Section 5324(3)(iii)(A) in this case.

request based on its conclusion that Grandparents did not have standing. Accordingly, the trial court's November 21, 2014 order is reversed and the case is remanded for the trial court to promptly list Grandparents' custody action for a hearing on the merits.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2015