**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Larry Francis WEAVER, Appellant.**

**Commonwealth of Pennsylvania, Appellant**

v.

**Larry Francis Weaver, Appellee.**

Superior Court of Pennsylvania.

Submitted May 13, 2013.
Filed Aug. 28, 2013.

David R. Erhard, Gettysburg, for Weaver.

Gerald N. Mangieri, Assistant District Attorney, Chambersburg, for Commonwealth.

BEFORE: BOWES, OTT, and FITZGERALD,* JJ.

OPINION BY BOWES, J.:

Larry Francis Weaver appeals from the judgment of sentence of six months of intermediate punishment that was imposed after he was found guilty of two counts of driving under the influence of alcohol. The Commonwealth has filed a cross-appeal raising a contention about the costs assessed against Appellant in this case. We affirm.

* Former Justice specially assigned to the Superior Court.

On January 1, 2010, Appellant was observed driving in an erratic manner and was stopped by state police. Appellant was arrested after he displayed sluggish and slow movements, failed a field sobriety test, and pills were found in his car. On April 9, 2010, two criminal informations were filed, setting forth that Appellant was being charged with two counts of DUI. Count one provided that Appellant was charged under 75 Pa.C.S. § 3802(d)(1)(ii), which states that "An individual may not drive, operate or be in actual physical control of the movement of a vehicle [when] ... [t]here is in the individual's blood any amount of a ... Schedule II or Schedule III controlled substance, ... which has not been medically prescribed for the individual." Count two of the information charged Appellant under 75 Pa.C.S. § 3802(d)(2), which provides, "An individual may not drive, operate or be in actual physical control of the movement of a vehicle [when] ... [t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." Both informations indicated that Appellant had "morphine, a schedule II controlled substance, in his blood within two hours" after he drove his vehicle. Informations, 4/9/10, at 1. No other drugs were mentioned in those documents.

Appellant filed a pretrial motion to suppress the results of his blood test by challenging the constitutionality of the vehicular stop and his arrest. That motion was denied following a hearing, and Appellant thereafter proceeded to a nonjury trial on March 23, 2011. After police testified, the Commonwealth presented the testimony of the witnesses who conducted the testing of Appellant's blood. When a witness began to testify that benzodiazepines consisting of diazepam and nordiazepam were discovered in his blood, Appellant objected. He

noted that there was no indication in the informations that benzodiazepines were found in his system and contended that the evidence was inadmissible since it was at variance with those documents, which only mentioned morphine.

The Commonwealth was permitted to amend the informations to add that Appellant also had benzodiazepines, diazepam and nordiazepam in his blood within two hours of when he was driving. Upon request, Appellant was granted a continuance. On June 29, 2011, the expert witnesses testified as to the chain of custody and testing of Appellant's blood. Additionally, the Commonwealth presented the opinion of an expert witness that the substances discovered in Appellant's blood, which consisted of morphine, diazepam and nordiazepam, rendered him incapable of driving safely. On September 2, 2011, the trial court adjudicated Appellant guilty of both counts of DUI.

Appellant was sentenced on June 13, 2012, to six months of intermediate punishment, which included seventy-two hours imprisonment and six weeks on electronic monitoring, as well as costs. Appellant filed a post-sentence motion arguing that the criminal laboratory user fee assessed as costs was unwarranted. He complained that the imposed costs included a fee for the appearance of the laboratory personnel at the second trial. He argued those expenses should not have been awarded to the Commonwealth since the trial was continued to a second day based on the Commonwealth's mid-trial amendment of the informations to include that Appellant had drugs other than morphine in his blood. On October 2, 2012, the trial court granted that post-sentence motion and reduced the criminal laboratory user fee portion of the taxable costs from $13,442.89 to $6,520.35. Appellant filed an appeal from the judgment of sentence, and the Commonwealth

filed a cross-appeal due to the grant of Appellant's post-sentence motion.

We first address the issues raised by Appellant:

1. The trial court erred in finding that there was probable cause to arrest because the primary basis of probable cause was evidence of [Appellant's] performance on the horizontal gaze nystagmus test (HGN) which should have been ruled inadmissible.

2. The trial court erred in finding that there was sufficient evidence to convict [Appellant] of DUI because the trial court, in violation of [Appellant's] rights under the Confrontation Clause of the Constitution, improperly allowed evidence of a blood test result despite the lack of testimony from the analyst who actually tested [Appellant's] blood for morphine.

Appellant's brief at 4.

Appellant's first claim is that the suppression court erred in concluding that there was probable cause for his arrest. Our standard of review in this context is settled:

> In addressing a challenge to a trial court's denial of a suppression motion, we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as it remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Brown*, 64 A.3d 1101, 1104 (Pa.Super.2013) (citation omitted).

The existence of probable cause for an arrest is assessed by using the following principles:

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.

*Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa.Super.2008) (internal citations and quotation marks omitted).

> .... It is the facts and circumstances **within the personal knowledge of the police officer** that frames the determination of the existence of probable cause. *See, e.g., Commonwealth v. Lawson*, 454 Pa. 23, 27, 309 A.2d 391, 394 (1973) ("Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.").

*Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa.Super.2011) (en banc) (emphasis in original).

In this case, the court denied Appellant's suppression motion based upon the following facts, which are supported by the evidence adduced at the suppression hearing:

> On January 1, 2010, Timothy Timmons was driving north on State Route 997 when he encountered a vehicle driven by Defendant swerving back and forth across the median. After following the vehicle onto Interstate 81, Timmons called 911. Timmons informed the dispatcher that a vehicle was driving

erratically, and related to the dispatcher Timmons' name, address, and the license plate number of the vehicle he was following. The dispatcher asked Timmons to follow the vehicle until state police arrived, and he agreed to do so. Timmons followed the vehicle until state police passed him on Route 30. Up until the time that the police passed Timmons, he gave the dispatcher live, moment-to-moment updates as to what he was observing, and these updates were passed along to Trooper Matthew Hunter.

Trooper Hunter was the first state trooper to make contact with the vehicle on Route 30. After passing Timmons, he followed the vehicle for a short time, and observed the vehicle drifting from the right shoulder of the road across to the center median, and then back to the right shoulder. Trooper Hunter then activated his lights and initiated a traffic stop. The vehicle came to a stop only after swerving from the right shoulder again.

Trooper Hunter noticed that Defendant's pupils were very constricted, but did not notice any other sign of intoxication. However, based on Trooper Hunter's observations of Defendant's driving, corroborated by Timmons' observations, and the size of Defendant's pupils, he asked Defendant to perform field sobriety tests. Defendant was limping, and explained that he had a leg injury. Therefore, Trooper Hunter proceeded with only one field sobriety test, the horizontal gaze nystagmus (HGN) test, due to Defendant's physical state. [That test was conducted twice.] Defendant's eyes showed extensive nystagmus, and this led Trooper Hunter to believe that Defendant was under the influence of some type of drug. Trooper Hunter asked Defendant whether he had taken any medication, and Defen-

dant denied that he had taken any that day. Trooper Hunter consulted with two other troopers, and both felt that Defendant was under the influence of something.

Trooper Hunter called the station to try to get a Drug Recognition Expert to come to the scene, in order to evaluate Defendant. While Trooper Hunter was on the phone, Trooper Stephen Rowe obtained consent from Defendant to search the vehicle. As a result of this search, Trooper Rowe found a keychain, with a canister attached to it, hanging from the ignition. Trooper Rowe then opened the canister, which contained suboxone and valium. Defendant was shown the contents of the canister, and he admitted that they were his prescription pills. Defendant was then placed under arrest for driving under the influence.

Trial Court Opinion, 9/23/10, at 1–3 (footnote omitted).

■ Appellant raises a two-fold challenge to the existence of probable cause to arrest him. He first claims that "[t]he HGN results should be deemed inadmissible in the instant matter, because the appropriate foundation was not established. Requisite evidence that the science underlying HGN testing is generally accepted in the scientific community was not presented by the Commonwealth." Appellant's brief at 11.

In maintaining that Trooper Hunter could not rely upon his HGN test results for purposes of probable cause, Appellant cites a series of cases wherein we held that the HGN test is inadmissible at trial as substantive proof that a defendant is guilty of driving under the influence. Specifically, in *Commonwealth v. Miller,* 367 Pa.Super. 359, 532 A.2d 1186, 1187–88 (1987), we accepted the defendant's "contention that

the trial court improperly admitted into evidence results of the HGN test." We held that case authority prohibits evidence based on scientific principles without a showing that the methodology is generally accepted by experts in the field to which the principle belongs. The HGN test rests on the belief that the consumption of certain substances increases a rapid involuntary oscillation of the eyeballs. At the trial, there was no showing that experts in the field accepted the premise that the substance in question, alcohol, caused exaggeration of eye twitches.

In *Commonwealth v. Apollo*, 412 Pa.Super. 453, 603 A.2d 1023 (1992), we considered a Commonwealth appeal from an order prohibiting the use of HGN testing to establish a defendant's guilt of driving while under the influence of alcohol. We rejected the Commonwealth's attempt to obtain introduction of the HGN results through the testimony of an optometrist. We concluded that while the witness "deemed the HGN to be quite reliable, ... his testimony fell short of establishing the 'general acceptance in the scientific community' standard" in that the optometrist's opinion "was largely based on his own personal views and observations." *Id.* at 1027–28; *see also Commonwealth v. Stringer*, 451 Pa.Super. 180, 678 A.2d 1200 (1996) (examining opinion of same optometrist involved in *Apollo* and following *Apollo* decision by ruling HGN test results were improperly admitted at trial to establish defendant's guilt).

■ Appellant maintains that, based on this line of cases, Trooper Hunter could not rely upon the HGN results for purposes of determining whether there was probable cause to believe that Appellant was driving under the influence of a controlled substance. However, it is well established that probable cause to arrest can be supported by the existence of evidence that is inadmissible at trial. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Commonwealth v. Devlin*, 221 Pa.Super. 175, 289 A.2d 237 (1972). Indeed, in the probable cause determination, as outlined *infra*, probable cause is examined by the facts within the knowledge of the police officer. Officer Hunter, who was trained in the administration of the HGN test, was permitted to rely on his observations gained from that procedure to support his conclusion that Appellant was driving under the influence of a controlled substance.

The United States analyzed this concept in *Brinegar*. Therein, a probable cause determination was upheld based upon information that the trial court subsequently ruled was inadmissible at the defendant's trial. The data in question was the police officer's knowledge of the defendant's prior illegal dealings. The defendant claimed that the evidence excluded at trial should not have been considered during the litigation of whether there was probable cause. The High Court rejected that proposition and held that the "criterion of admissibility in evidence, to prove the accused's guilt," should not be applied to "the facts relied upon to show probable cause." *Id.* at 172, 69 S.Ct. 1302.

The Supreme Court concluded that the defendant's position conflated and disregarded the difference between what is "required to prove guilt in a criminal case and what is required to show probable cause for arrest or search." *Id.* at 173, 69 S.Ct. 1302. The Court continued that there was "a large difference between the two things to be proved," guilt as opposed to probable cause, "as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them." *Id.* The Court held that the

court's rulings, one admitting, the other excluding the identical testimony, were neither inconsistent nor improper. They illustrate the difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt. Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.

However, if those standards were to be made applicable in determining probable cause for an arrest or for search and seizure, more especially in cases such as this involving moving vehicles used in the commission of crime, few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end.

Id. at 174, 69 S.Ct. 1302 (footnote omitted).

Thus, it is clear that the rules of evidence governing a trial are inapplicable to a determination of probable cause. *Accord Devlin, supra* at 238 ("It must be kept in mind that in determining the sufficiency of the statements to warrant a finding of probable cause for the arrest, we do not apply strict evidentiary rules requisite to a finding of defendant's guilt."). Hence, we reject Appellant's assertion that Trooper Hunter could not rely upon the results of the HGN test when assessing whether he had probable cause to arrest Appellant.

■ Appellant also avers that, even if probable cause can be supported based upon the HGN results, Trooper Hunter lacked the requisite facts to make a valid arrest. We disagree. In this case, a concerned citizen, who identified himself, called police to report that Appellant's car was being driven in a dangerous manner in that it was weaving and crossing into the oncoming lane of traffic. Trooper Hunter started to follow Appellant and initiated a stop after he observed erratic driving. During the interdiction, Appellant appeared sluggish and was slow to respond to commands. Appellant had an injured leg and could not perform the other field sobriety tests so Trooper Hunter twice administered the HGN test. That test revealed that Appellant's eyes had extensive nystagmus, which is rapid involuntary oscillation of the eyeballs. Since Trooper Hunter did not detect the odor of alcohol or observe other signs of intoxication, he concluded that Appellant's irregular driving and exaggerated nystagmus was a result of the fact that he was driving under the influence of a narcotic. Finally, while Appellant was being investigated based upon the existence of a reasonable suspicion that he was driving under the influence, he consented to a search of his vehicle, wherein controlled substances were discovered. Those facts gave rise to probable cause. *Commonwealth v. Anthony,* 977 A.2d 1182 (Pa.Super.2009) (stating that police can rely upon information supplied by an identified citizen about defendant's driving behavior in determining whether reasonable suspicion exists to stop car based on suspected DUI); *Commonwealth v. Angel,* 946 A.2d 115 (Pa.Super.2008) (examining whether police possessed probable cause to arrest for driving under the influence). *Cf. Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992) (no signs of intoxication observed by police prior to blood extraction obtained solely due to fact traffic accident occurred).

Appellant's second contention is that his convictions rest on insufficient evidence because his Confrontation Clause rights were violated. Initially, we note that Appellant has incorrectly framed this issue as relating to the sufficiency of the evidence. Appellant's position that his confrontation rights were violated involves the trial court's decision to permit evidence to be introduced at trial over objection by Appellant. If that evidentiary ruling was erroneous, then Appellant would be entitled to a new trial, but he would not be entitled a discharge. This conclusion flows from the well-ensconced precept that "in evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Commonwealth v. Gray,* 867 A.2d 560, 567 (Pa.Super.2005) (citation and quotation marks omitted).

We review Appellant's contention under the following standard. "Our review of [a] Confrontation Clause issue presents us with a question of law, and thus our standard of review is plenary and our scope of review is *de novo.*" *Commonwealth v. Abrue,* 11 A.3d 484, 487 (Pa.Super.2010). On appeal, Appellant relies upon *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), and *Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011).

Under the Confrontation Clause, a defendant has the right to confront any witnesses against him. Prior to the decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court took the view that "the Confrontation Clause did not bar the admission of out-of-court statements that fell within a firmly rooted exception to the hearsay rule." *Williams v. Illinois,* —— U.S. ——, 132 S.Ct. 2221, 2223, 183 L.Ed.2d 89 (2012); *see Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (abrogated by *Crawford* ). However, the *Crawford* Court held, "Testimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford, supra* at 59, 124 S.Ct. 1354 Since dissemination of the *Crawford* decision, the Supreme Court has handed down a number of decisions that interpret whether a statement is testimonial in nature and thus subject to *Crawford. See Williams, supra* at 2223 (collecting cases).

Pertinent herein are those decisions discussing whether scientific reports that establish an element of the crime in question can be introduced without offending the Confrontation Clause. Those decisions include *Melendez–Diaz* and *Bullcoming,* upon which Appellant herein relies. In *Melendez–Diaz,* the defendant was charged with drug trafficking in cocaine. He was found in possession of a white powdery substance contained in three bags. The substances were forwarded to a state forensic laboratory for analysis, and, at trial, the court admitted certificates of analysis that were generated from the laboratory and executed under oath before a notary. Those documents certified that the materials discovered in the three bags were "examined with the following results: The substance was found to contain: Cocaine." *Melendez–Diaz, supra* at 308, 129 S.Ct. 2527. The High Court deemed those certificates to be testimonial statements introduced for the truth of the matter asserted therein, and the Court ruled that they were inadmissible unless the persons who created the certificates were presented at trial and subjected to cross-examination.

In the *Bullcoming* case, a driving-under-the-influence-of-alcohol prosecution was at issue. After the defendant was convicted, he challenged, based upon the Confrontation Clause, the prosecution's introduction into evidence of a forensic report by an analyst who had performed the blood testing and certified the defendant's blood alcohol content. In that case, the analyst was not presented as a witness. Rather, the prosecution offered the testimony of a different analyst, who was familiar with the testing procedures of the laboratory in question but who had neither performed nor observed the actual analysis of the defendant's blood. The Supreme Court found that the Confrontation Clause was not satisfied by the use of this surrogate witness through which a report prepared by another to establish an element of the crime was admitted. The Court held that the Confrontation Clause prohibits the introduction into evidence of a laboratory report containing a certification about the results of a test necessary to establish an element of the crime in question through the in-court testimony of a witness who did not perform or observe the test.

In this case, Appellant's Confrontation Clause challenge cannot be sustained because every person who was involved in the testing and analysis of his blood was presented as a witness at trial. As noted, the Commonwealth charged that Appellant had diazepam, nordiazepam, and morphine in his system after his arrest. The laboratory that tested Appellant's blood for the presence of controlled substances was National Medical Services ("NMS Lab"). Two people were involved in the testing of Appellant's blood for purposes of determining whether it contained the benzodiazepines of diazepam/nordiazepam, and two people analyzed his blood for the presence of morphine. Christopher Graf, who was presented as a witness at trial, prepared a sample of Appellant's blood for the test that revealed that it contained diazepam and nordiazepam. NMS Lab employee Meredith Atkins performed that test by placing the prepared blood sample into a liquid chromatography mass spectrometer. Ms. Atkins related the results of her test at trial and was available for cross-examination. N.T. Trial, 6/29/11, at 4–11.

Commonwealth witness Denise Lancaster, who worked for NMS Lab, was one of the two people who were involved in the testing of Appellant's blood to reveal the existence of opiates. The test for opiates is performed by means of a gas chromatography mass spectrometry ("GCMS"). She testified at trial that she took a sample of Appellant's blood and prepared it for testing in the GCMS instrument in accordance with her standard operating procedure. After performing that process, Ms. Lancaster placed the blood in the GCMS testing device. *Id.* at 37–44.

Commonwealth witness L. Paul Miller, Jr., was the NMS Lab employee who did the actual testing of Appellant's blood for opiates, and he extensively described the GCMS process. He also stated specifically that he ran the GCMS test on Appellant's blood and that he produced the results and recorded them by placing them into a computer. Mr. Miller also examined the GCMS instrument and Appellant's blood samples to ensure that the results were accurate. Finally, Mr. Miller checked the chain of custody to verify that the blood he tested belonged to Appellant. Mr. Miller also related that, after the tests were performed, the outcomes were given to a toxicologist who gathered all of the values and rendered a determination as to the meanings of the findings. *Id.* at 47–62.

The Commonwealth presented the testimony of the forensic toxicologist with NMS Lab, Dr. Sherri Kacinko, who reviewed the outcomes of the tests per-

formed on Appellant's blood by the four testifying analysts. *Id.* 61–70. At trial, she described the effects of the three drugs found in Appellant's system, and she opined that Appellant's inability to drive his car safely by keeping it within its lane of travel was due to the effects of the narcotics he had consumed. *Id.* at 87. She also concluded that the combination of drugs in the levels reported in Appellant's blood would impair a person's ability to drive.

Appellant's Confrontation Clause challenge is obtuse and involves a mischaracterization of the record. Appellant claims that "Lancaster did not assert that she did in fact test [Appellant's] sample,"[1] and he also implies that Mr. Miller's testimony was deficient in some respect. Appellant's brief at 20, 19. As described above, Ms. Lancaster and Mr. Miller were the two people who were involved in the GCMS testing of Appellant's blood for opiates. At trial, Ms. Lancaster related that she worked as a chemist at NMS Labs. By the time of trial, she was located in a different department at the laboratory, but stated that her previous department was the GCMS department. *Id.* at 39. Ms. Lancaster was asked whether she was in the GCMS department when she "conducted tests relevant to this case," and she responded, "Yes." *Id.* She further gave the following specifics:

> Q. Now, when you start working on a sample how does your work on that sample get entered into the system?
>
> A. I personally follow the chain of custody and then after the work that I did, someone will look at the results and then

enter those results into our computer system.

> Q. But whenever you do a sample is that record?
>
> A. That would be the chain of custody, yes. It is recorded.
>
> Q. So would it be attached to the work order number?
>
> A. Yes, sir.
>
> Q. What specifically did you do for a work order number that you were told about for this case?
>
> A. I extracted it for the GCMS procedure to look at free opiates.

*Id.* at 39–40. Additionally, the district attorney asked Ms. Lancaster, "Now, when you ran tests on this work order that's associated with Larry Weaver, what testing did you do?" *Id.* at 41. Ms. Lancaster answered, "I did the free opiate testing by GCMS." *Id.* Thus, Appellant incorrectly asserts that Ms. Lancaster did not actually test his blood sample and that the Commonwealth "established absolutely no nexus between Lancaster's actions and [Appellant's] blood test." Appellant's brief at 20.

Moreover, Mr. Miller unequivocally stated that he performed the GCMS test on Appellant's blood once it was in the testing device. He was asked, "Do you recall specifically performing tests on a sample for an individual named Larry Weaver?" *Id.* at 49. Mr. Miller responded, "I remember performing the test on the [work order] number which I have been told correlates to Larry Weaver." *Id.* at 49. The prosecutor also asked, "Mr. Miller, what kind of test did you perform on the work order number that you are here to testify about today?" *Id.* at 50. Mr. Mil-

---

1. Ms. Lancaster did acknowledge that, since she conducted thousands of tests, she did not specifically remember performing the test in question. However, her inability to recall the precise test at issue herein does not mean that she did not execute it. The data entries and documentation established that she did conduct the pertinent analysis, and Appellant's attempt to circumvent this record evidence is a disingenuous disservice to this Court.

ler answered, "Free opiate testing[.]" *Id.* at 51. Appellant blatantly disregards the transcript when he accuses the Commonwealth of incorrectly taking the position that Mr. Miller "actually ran the test" and asserts that "the record reveals that Miller testified that he analyzed the data (Gas Chromatogram) produced as a result of the test." Appellant's brief at 19.

In conclusion, *Melendez–Diaz* or *Bullcoming* were not offended herein because all of the analysts involved in the testing of Appellant's blood for opiates as well as benzodiazepines were presented as witnesses at trial. Additionally, the Commonwealth presented the testimony of the toxicologist who rendered an opinion as to the effects on those substances on Appellant's ability to drive. No reports were introduced into evidence by someone who did not prepare them and the results of no tests were revealed absent the testimony of the analyst who performed the test. Appellant's Confrontation Clause challenge is frivolous. Hence, we reject his challenges on appeal and affirm his judgment of sentence.

■ In its cross-appeal, the Commonwealth presents these contentions:

1) Did the lower court commit an error of law and abuse its discretion by ignoring the mandate of section 9728(g) of the judicial code requiring convicted defendants to pay all costs of prosecution when it absolved the Defendant of the burden to pay the costs of witness testimony for the second day of trial?

2) Did the lower court commit an error of law and abuse its discretion when it found that the Commonwealth should bear the burden of the costs of witness testimony for the second day of trial when such testimony was a necessary expense under 16 P.S. § 1403 because it was needed to convict the Defendant of the crimes charged?

Brief of Cross–Appellant at 1.

The cross appeal concerns application of the statutory provisions governing costs, 42 Pa.C.S. § 9728 and 16 P.S. § 1403. Hence, "[t]he question on appeal involves statutory construction, which is a question of law; thus, our review is plenary." *Commonwealth v. Garzone*, 613 Pa. 481, 34 A.3d 67, 74 (2012). The Commonwealth relies upon 42 Pa.C.S. § 9728(g), relating to costs, which states:

> **(g) Costs, etc.**—Any sheriff's costs, filing fees and costs of the county probation department, clerk of courts or other appropriate governmental agency, including, but not limited to, any reasonable administrative costs associated with the collection of restitution, transportation costs and other costs associated with the prosecution, shall be borne by the defendant and shall be collected by the county probation department or other appropriate governmental agency along with the total amount of the judgment and remitted to the appropriate agencies at the time of or prior to satisfaction of judgment.

The Commonwealth also points us to 16 P.S. § 1403 (emphasis added), which provides in pertinent part:

> **All necessary expenses** incurred by the district attorney … in the … prosecution of persons charged with or suspected of the commission of crime, … shall be paid by the county from the general funds of the county. In any case where a defendant is convicted and sentenced to pay the costs of prosecution and trial, the expenses of the district attorney in connection with such prosecution shall be considered a part of the costs of the case and be paid by the defendant.

*See also* 42 Pa.C.S. § 1725.3(a).[2]

In the present case, the trial court assessed against Appellant the fees charged by the laboratory personnel for appearing at trial on the first occasion. It refused to impose the laboratory fees charged for their attendance at the second trial. The trial court reasoned that the continuance for the laboratory testimony was necessitated solely due to an error by the Commonwealth. Specifically, in the informations, Appellant was charged with having only morphine in his blood. The second laboratory witness who the Commonwealth presented at the first trial on March 23, 2011, was Meredith Atkins. As noted, she tested Appellant's blood for benzodiazepines by using a liquid chromatography method and discovered diazepam and nordiazepam. Appellant objected to her testimony because the informations did not mention the existence of benzodiazepines in his blood. Additionally, Appellant received a laboratory report through discovery and that report indicated that the substance at issue was morphine revealed through a GCMS test. N.T. Trial, 3/31/11, at 75, 80. At that point, over Appellant's objection, the Commonwealth was permitted to amend the information to add the benzodiazepines found in Appellant's blood. However, since Appellant was not placed on notice about the existence of and testing procedures utilized for those sub-

stances and was not prepared to defend against the testimony that a combination of drugs was responsible for his erratic driving, he was granted a continuance.

At sentencing, the court assessed costs against Appellant, and those costs included a $13,442.80 fee charged by NMS Lab for the appearance of its personnel at Appellant's two trial dates. Appellant filed a post-sentence motion, and the trial court granted him relief from the NMS Lab charges for the second day of trial, which were $6,922.54; it thus reduced the assessed laboratory fees by that amount. In so doing, it relied upon the decision in *Commonwealth v. Coder*, 490 Pa. 194, 415 A.2d 406 (1980), and reasoned as follows:

> The Court agrees with [Appellant] and rejects the Commonwealth's argument. [Appellant] should not have to pay for the witness-attendance costs of the second day of trial. The continuance and the necessity of recalling witnesses occurred due to an oversight or mishap by the Commonwealth. The information, as originally filed, was defective. It did not fit the facts of the case. The information alleged the presence of morphine only in [Appellant's] blood. N.T., 3/23/11, at 82. But the laboratory report showed that [Appellant] had morphine, diazepam and nordiazepam in his

**2.** That statute reads:

> A person who is placed on probation without verdict pursuant to section 17 of the act of April 14, 1972 (P.L. 233, No. 64), [FN1] known as The Controlled Substance, Drug, Device and Cosmetic Act, or who receives Accelerated Rehabilitative Disposition or who pleads guilty to or nolo contendere to or who is convicted of a crime as defined in 18 Pa.C.S. § 106 (relating to classes of offenses) or 75 Pa.C.S. § 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked) or 3802 (relating to driving under influence of alcohol or controlled substance) or 3735 (relating to

> homicide by vehicle while driving under influence) or 3735.1 (relating to aggravated assault while driving under the influence) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock) or a violation of The Controlled Substance, Drug, Device and Cosmetic Act shall, in addition to any fines, penalties or costs, in every case where laboratory services were required to prosecute the crime or violation, be sentenced **to pay a criminal laboratory user fee which shall include, but not be limited to, the cost of sending a laboratory technician to court proceedings.**
> 42 Pa.C.S. § 1725.3 (emphasis added).

blood. *Id.* To cure the deficiency, the Commonwealth was forced to ask leave to amend the information. We granted the Commonwealth's motion, but because of the prejudice to [Appellant], allowed a continuance, too.

The Commonwealth is primarily responsible for the conditions that necessitated a second day of trial and thereby the need for the Commonwealth to recall its witnesses. The Court determines that [Appellant] should be absolved of the costs incident to that second day. *Cf. Coder,* 415 A.2d at 409 n. 4. 42 Pa. C.S. § 1725.3 requires a defendant to pay "a criminal laboratory user fee which shall include, but not be limited to, the cost of sending a laboratory technician to court proceedings." Read in conjunction with footnote 4 of *Coder* and 16 P.S. § 1403, requiring [Appellant] to pay for witness costs for the first day fulfills the statutory mandate. If the Commonwealth had properly drafted the information in this case, the motion to amend and therefore the continuance and second day of trial would have been unnecessary. *Cf.* [*Com v.*] *Hower,* 406 A.2d [754] at 757 [ (Pa.Super.1979) ] ("If the expenses were unnecessary, a defendant cannot be required to pay them.").

. . . .

The Court finds that the Commonwealth should bear the costs of testimony for the second day of trial. Such a holding forces the Commonwealth to bear the cost of its oversight (the failure to properly charge [Appellant] in the information). The Commonwealth cannot switch horses midstream and saddle a defendant with the cost of the second mount. [Appellant's] post-sentence motion is granted.

Trial Court Opinion, 10/2/12, at 7–9.

We conclude that the trial court properly applied language in the *Coder* decision.

Therein, the defendant was taxed with the costs of his prosecution which included the expenses occasioned by the grant of the defendant's motion for change in venue due to pretrial publicity. While the Supreme Court affirmed that those costs, if specifically delineated, could be recovered, it also indicated, "[w]here it is determined that the prosecution is primarily responsible for the conditions which necessitate the change of venue, the defendant should be absolved of the costs incident to the change of venue." *Id.* at 409 n. 4.

The trial court's reasoning herein is consistent with that outlined in *Coder.* A defendant should not be assessed costs that would not have been incurred had the Commonwealth properly performed its prosecutorial duties. The language of § 1403 provides for only "necessary" expenses. The costs in question would not have been needed had the charging instruments been correct. However, the informations did not apprise Appellant of the testing for benzodiazepines, and he was not given the reports about that testing. Similarly, Appellant was not prepared to defend against the charge that it was a combination of benzodiazepines and opiates that caused his erratic driving. Since the Commonwealth was at fault for incurring the charges imposed by the laboratory for the appearance of the witnesses at the second day of trial, the charges cannot be considered a "necessary expense … incurred by the district attorney" as outlined in § 1403. Hence, we affirm.

Judgment of sentence affirmed.