J. S17006/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, :  IN THE SUPERIOR COURT OF
             :      PENNSYLVANIA
     Appellee   :
             :
    v.       :
             :
JULIE C. RIGGS,      :
             :
     Appellant  :   No. 348 WDA 2014

Appeal from the Order January 24, 2014
In the Court of Common Pleas of Cambria County
Criminal Division No(s).: CP-11-CR-0000850-2012

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:    **FILED APRIL 13, 2015**

   Appellant, Julie C. Riggs, appeals *pro se* from the judgment of sentence entered in the Cambria County Court of Common Pleas following her jury convictions of resisting arrest and disorderly conduct.[1] She avers (1) the evidence was insufficient; (2) the verdict was against the weight of the evidence; (3) trial counsel was ineffective for unduly influencing her not to testify at trial; and (4) the trial court acted with bias in imposing a sentence in the aggravated range. We affirm.

   The trial court summarized the evidence adduced at the jury trial:

     On St. Patrick's Day . . . March 17, 2012, at 2:17 a.m., all
     on-duty Johnstown Police Officers responded to a large

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 5104, 5503(a)(4).

> fight/disturbance outside the Coney Island restaurant in downtown Johnstown. Several persons were . . . yelling outside of the restaurant, and various people were fighting inside the restaurant. Approximately 75 persons were on-scene, and numerous persons were detained by the Johnstown Police.

Trial Ct. Op., 4/4/14, at 5-6.[2]

The court summarized the trial testimony of the arresting officer, Reginald Floyd, as follows:

> Upon arriving on-scene, Officer Floyd was instructed . . . to guard 3 individuals who were being detained, with their hands on the restaurant's outside wall. While watching these individuals, [Appellant] nudged into/bumped into/utilized blunt force on Officer Floyd's lower back, causing him to take 2-3 steps toward the restaurant wall. Floyd turned around, and confronted [Appellant] by stating, "hey you bumped into me." [Appellant] responded "oh well," and leaned into her vehicle to retrieve something.

*Id.* at 6.

Our review of the trial transcript reveals the following testimony by Officer Floyd. When Appellant replied "[O]h, well," he said "[Y]ou know what, get your fat ass in the car and get out of here, call it a night. [Appellant] said, no, I'm not going anywhere, I'm going back into Coney Island." N.T. Trial, 10/10/13, at 94. Officer Floyd testified, "I said, [O]kay,

---

[2] At the sentencing hearing, the trial court recalled there were "30 to 70 people that were obviously under the influence of alcohol or some other substance," "people were banging on the windows of the Coney Island Restaurant," it was "a near riot situation," and there were "maybe four or five police officers" to handle or control the crowd. N.T. Sentencing, 12/17/13, at 7, 8.

just get in the restaurant and get out of here because I was somewhat concerned about the three people I had detained because . . . that was my original mission." *Id.* at 95. However, Appellant was swearing, was "demonstrative," and yelled, "Eff you, you don't know who you're eff-ing dealing with, you're an eff-ing peon, you don't know, better Google my name[, and] you apparently don't know who I am." *Id.* at 95-96.

Officer Floyd believed Appellant should not go into the restaurant because he did not know what would happen with the large crowd who had been drinking. *Id.* At that point, Officer Floyd told Appellant she was under arrest, grabbed her left wrist, and put on one handcuff. *Id.* Appellant "pull[ed] back and started fighting." *Id.* at 96. The officer told her to stop resisting, warned her he would use pepper spray if she did not stop, and "pulled her forward and swept her front leg." *Id.* at 96. Appellant fell on "her knees still resisting." *Id.* Officer Floyd "gave her a couple more warnings, stop, you're going to be pepper sprayed," but Appellant did not stop and the officer did pepper spray her. *Id.* Officer Floyd was concerned because a person who has on one handcuff and is pulling away presents "a dangerous situation," as the handcuff could become a weapon. *Id.* at 97. At trial, the officer apologized for his "fat ass" remark and acknowledged it "was very unprofessional." *Id.* at 105.

This case proceeded to a jury trial on October 10, 2013, on the charges of resisting arrest, a misdemeanor of the second degree, and

disorderly conduct, a misdemeanor of the third degree. The Commonwealth called three witnesses: (1) Officer Floyd, (2) Lawrence Burke, one of the people being detained by Officer Floyd when the incident with Appellant occurred; and (3) Daniel Hockenberry, an eyewitness to the incident. Appellant did not testify, but presented the testimony of Brenda Shaffer, an employee at the Coney Island restaurant on the night in question. The jury found Appellant guilty of both charges, and the trial court subsequently found her not guilty of harassment. We note that at trial, Appellant was represented by privately retained counsel, Thomas Dickey, Esq.

On December 17, 2013, the trial court convened a sentencing hearing. The court indicated its intention to impose a sentence in the aggravated range, and Appellant's counsel strenuously argued against jail time. The court did impose an aggravated-range sentence as follows: (1) for resisting arrest, imprisonment of three days to twelve months, with parole after three days, and (2) for disorderly conduct, twelve months' probation, to run concurrently.

On December 27, 2013, Appellant filed a timely, counseled post-sentence motion. On the same day, Attorney Dickey filed a petition to withdraw from representation, averring Appellant wished to pursue claims that he provided ineffective assistance. The court granted counsel leave to withdraw on January 3, 2014. On January 27th, the court denied Appellant's post-sentence motion. We note Appellant did not make any claim before the

trial court of counsel's ineffective assistance, either in her post-sentence motion or after the court allowed Attorney Dickey to withdraw.[3]  Appellant filed a *pro se* timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement of matters complained of on appeal.  As stated above, Appellant proceeds *pro se* in this appeal.

Appellant's first two issues challenge the sufficiency and weight of the evidence, and include a multitude of sub-claims.  In the statement of the facts section in her appellate brief, Appellant alleges she "was advised against her wishes not to testify by her counsel so her account of the facts of the case are not on the appeal record for review."[4]  Appellant's Brief at 7.  She then presents her account of the incident, which differs from Officer Floyd's trial testimony.[5]  *Id.*  We cannot consider this version of the facts,

---

[3] As we discuss *infra*, however, she raised the claim for the first time in her Pa.R.A.P. 1925(b) statement.

[4] Appellant also avers she "filed a civil suit in March 2014 related to this criminal case," and that "[h]er sworn factual background statements . . . can be found by reviewing 3:14-v-00046-KRG-KAP RIGGS v. FLOYD et al, Docket No. 8, Amended Complaint."  Appellant's Brief at 7.  These documents are not included in the certified record in this appeal, and therefore we do not review them.

[5] Appellant avers the following in her appellate brief.  When she and a friend entered the Coney Island restaurant, the "fighting and chaos [were] already over," "[t]he officers had the scene under control and patrons continued to go in and out of the restaurant."  Appellant's Brief at 7.  When Officer Floyd said she had bumped into him, Appellant said, "I'm sorry Sir, I didn't realize I had."  *Id.* at 8.  Officer Floyd, however, "angrily replied, 'Well you did!,'" and Appellant apologized again, turned, and walked away "to avoid any further confrontation."  *Id.*  Officer Floyd "yelled in her direction, 'Hey Fat

however, because it is not a part of the certified record. *See* Pa.R.A.P. 1921, *note* ("An appellate court may consider only the facts which have been duly certified in the record on appeal."). Instead, we review only the evidence adduced at trial.

Appellant's first issue on appeal is the sufficiency of the evidence to establish resisting arrest and disorderly conduct. She presents two arguments in support, which we address *seriatim*. First, Appellant claims the resisting arrest conviction cannot stand because the underlying arrest for disorderly conduct was unlawful. She contends there was no evidence suggesting she "had the intent of having any contact with Officer Floyd let along being disorderly or causing any type of commotion to commit a crime." Appellant's Brief at 15. Appellant further avers "Officer Floyd conveniently omitted in the Affidavit of Probable Cause [attached to the criminal complaint] that he called [her] a 'Fat Ass' twice," and that had he

---

Ass!,'" Appellant turned and asked "in an offended tone, 'What did you just call me?'," and the officer again called her "a Fat Ass." *Id.* Appellant told him "his comments were uncalled for," and the officer immediately grabbed and twisted her left wrist, "leg swept her" foot, causing her to fall on her knee and both forearms and causing her cell phone to fall and break. *Id.* at 9. "Without warning . . . Officer Floyd pepper sprayed [her] eyes and chest area." *Id.* Appellant screamed "You're getting sued for this!," and the officer "replied, 'You're under arrest!'" *Id.* at 9.

Appellant further states she was transported to the police garage and then the hospital "to have her eyes flushed out" and be checked for other injuries. *Id.* at 9. An officer asked her to take a blood alcohol level test, but Appellant refused because "she landed on both forearms and they were badly bruised and lacerated." *Id.*

not called her this inappropriate name, "the altercation never would have taken place." ***Id.*** We find no relief is due.

This Court has stated:

> [O]ur standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt."

***Commonwealth v. Rahman***, 75 A.3d 497, 500 (Pa. Super. 2013) (citations omitted).

> In assessing the trial court's ruling [on a post-sentence motion], we must "review[ ] the trial court's exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence." The fact-finder is free to believe all, part, or none of the evidence; an appellate court will not make its own assessment of the credibility of the evidence. "The trial court will only award a new trial when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." In turn, we will reverse a trial court's refusal to award a new trial only when we find that the trial court abused its discretion in not concluding that the verdict was so contrary to the evidence as to shock one's sense of justice. In effect, "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings."

***Commonwealth v. Olsen***, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citations omitted).

Appellant was convicted under the following subsection of the disorderly conduct statute: "A person is guilty of disorderly conduct if, with

intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: . . . (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." *See* 18 Pa.C.S. § 5503(a)(4).

> Inherent in the act of physically attempting to impede a law enforcement officer from carrying out his or her official duties in the public arena is the risk of creating a condition hazardous or physically offensive in nature. [W]e have held, 'the reckless creation of a risk of public alarm, annoyance or inconvenience is as criminal as actually causing such sentiments.'"

*Commonwealth v. Love*, 896 A.2d 1276, 1286 (Pa. Super. 2006) (citation omitted).

> The Pennsylvania Crimes Code defines resisting arrest as follows:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104. "[A] lawful arrest is an element of the crime of resisting arrest," and "the lawfulness of an arrest depends on the existence of probable cause to arrest the defendant." *Rahman*, 75 A.3d at 504 (citations omitted). "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a

warrantless arrest is determined by the totality of the circumstances." ***Commonwealth v. Weaver***, 76 A.3d 562, 565 (Pa. Super. 2013) (citations omitted).

In the instant appeal, we disagree with Appellant's claim that "[t]here is no reference anywhere in the record that suggests [she] had the intent of . . . causing any type of commotion to commit a crime."[6] Appellant's Brief at 16. At trial, Officer Floyd clearly testified that although he made an "unprofessional" comment to Appellant, he initially told her to leave and "call it a night." N.T. Trial at 94, 105. Appellant refused and stated she would instead return inside the restaurant. *Id.* at 94. Officer Floyd agreed, stating, "[O]kay, just get in the restaurant and get out of here." *Id.* at 95. Instead of leaving, however, Appellant was "demonstrative" and yelled, "Eff you, you don't know who you're eff-ing dealing with, you're an eff-ing peon, you don't know, better Google my name[, and] you apparently don't know who I am." *Id.* at 95-96. It was at this point that Officer Floyd placed Appellant under arrest. *Id.* at 96.

We emphasize, as the trial court did, the context in which this exchange occurred. At the time, all members of the Johnstown police

---

[6] Appellant further avers, "No one in their [sic] right mind would purposely bump into an officer for no reason or respond 'Oh well' if the officer told them they [sic] bumped into him." Appellant's Brief at 16. However, that was exactly the testimony of Officer Floyd; he testified that Appellant "bumped into [him], nudged [him] from the rear," with enough force to cause him to lose his balance and take three steps forward. N.T. Trial, at 92.

force—four or five officers, according to the trial court—were called to respond to fights and intoxicated behavior at a crowded restaurant on the night of St. Patrick's Day. Appellant's own witness, Brenda Shaffer—who was the person who called the police—testified that "[t]he crowd" of "[d]runks" had become "really out of hand and banging on the window." *Id.* at 142. While Appellant was yelling and swearing at Officer Floyd, he was watching three people who were being detained against a wall; indeed, he had told her to leave because he was "concerned about the three people [he] had detained because . . . that was [his] original mission." *Id.* at 95.

Furthermore, we note Appellant also wholly ignores the testimony of the Commonwealth's other witnesses, which corroborated that of Officer Floyd. Lawrence Burke was one of the individuals being detained by Officer Floyd when Appellant bumped into the officer. He testified to the following. When Appellant brushed into Officer Floyd, the officer asked her twice where she was going, and she did not respond. Appellant "turned around and was like, f--- you." N.T. Trial at 33. They argued for "a good two minutes," and Appellant was yelling. *Id.* at 35, 36. Burke thought the officers "were trying to get her to calm . . . down but it got so out of control." *Id.* at 36. The officers told Appellant "to get on the ground" but she refused, and "she was resisting for a good minute and a half . . . yelling back at the police like, no, I'm going to." *Id.* at 36-37. Burke also testified he had been drinking alcohol, and eventually pleaded to public drunkenness and disorderly

conduct. *Id.* at 23, 37.

Furthermore, Daniel Hockenberry testified to the following. He was not drinking alcohol, and arrived at Coney Island sometime after 2:00 a.m. to eat. *Id.* at 73. At that time, he knew Officer Floyd and recognized him outside the restaurant. *Id.* at 75-76. Hockenberry saw a woman "trying to talk" to Officer Floyd, and "Officer Floyd instructed her to go back to her car" a few times. *Id.* at 76-77. "They had words, and the next thing [Hockenberry knew,] she was face-first into the sidewalk." *Id.* at 77. One officer tried to handcuff her, but "she was kicking." *Id.* "Officer Floyd maced her and they got the handcuffs on her." *Id.*

Finally, we reject Appellant's request, despite her repeated claims that her attorney unduly influenced her to not testify, to consider her account of the events. Her version of the facts is not a part of the record and therefore not before this Court to consider. Instead, the jury, as finder of fact, was free to believe all, part, or none of the evidence presented at trial, and this Court cannot re-assess the credibility of the witnesses. *See Olsen*, 82 A.3d at 1049.

In light of the foregoing, we disagree with Appellant's contention that the record is devoid of evidence suggesting she intended to "be[ ] disorderly or caus[e] any type of commotion to commit a crime." *See* Appellant's Brief at 16. Her claims that she "simply went to her car to get her cell phone to make a call," and that no altercation would have occurred if Officer Floyd

had not "called her an inappropriate name" ignores the testimony by Officer Floyd that after he told her twice to leave, she yelled and swore at him. *See id.* Appellant's argument also ignores the testimony of Burke and Hockenberry. After evaluating the record in the light most favorable to the Commonwealth, we hold the evidence was sufficient for the jury to find Appellant recklessly created a risk of public annoyance or alarm and hazardous or physically offensive condition without any legitimate purpose. *See* 18 Pa.C.S. § 5503(a)(4); *Rahman*, 75 A.3d at 500; *Love*, 896 A.2d at 1286. Thus, we do not disturb her conviction of disorderly conduct.

Appellant's sole challenge to the sufficiency of the evidence for resisting arrest is that her arrest was unlawful. We disagree. After reviewing the totality of the circumstances, we hold Officer Floyd had probable cause to arrest her for disorderly conduct. *See Weaver*, 76 A.3d at 565.

Appellant's next argument against the sufficiency of the evidence is that her "language is protected by the First Amendment because no 'fighting words' were used and Officer Floyd was never threatened by [her] statements." Appellant's Brief at 16. This statement is a heading in Appellant's argument section, and there is no further argument concerning the statements she made to Officer Floyd. Instead, the ensuing portion of her brief—six sentences in total—is comprised of statements of law. *Id.* at 16-17. Without any further discussion, we find this claim waived. *See*

***Commonwealth v. Plante***, 914 A.2d 916, 924 (Pa. Super. 2006) (noting

failure to develop argument with citation to and analysis of relevant

authority waives issue on review).

Appellant's second issue on appeal is that the jury's verdict was

against the weight of the evidence.[7]  Again, she advances several theories in

support.[8]  First, she argues the "court abused its discretion by not allowing

evidence of Officer Floyd's prior acts of physical aggression."  Appellant's

Brief at 18.  This claim pertains to an evidentiary ruling, and not the weight

of the evidence, and this evidentiary challenge was not raised in Appellant's

*pro se* court-ordered Pa.R.A.P. 1925(b) statement.  ***See*** Pa.R.A.P.

1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in

accordance with the provisions of this paragraph (b)(4) are waived.").  In

the Rule 1925(b) statement, under the heading, "New Trial (Weight of the

Evidence)," Appellant states in pertinent part:

> [Appellant] had concrete evidence she was not permitted
> to disclose to the jury about Reginald Floyd's past history
> of lying under oath when he was testifying about his
> previous assault on a female citizen.  The greater weight of
> the evidence showed Reginald Floyd to be the aggressor
> and to have acted wrongfully with respect to the offenses
> of which [Appellant] was convicted.

---

[7] This issue is preserved for appellate review, as it was raised in Appellant's
post-sentence motion.  ***See*** Pa.R.Crim.P. 607(A).

[8] For ease of disposition, we have reordered the four arguments under
Appellant's weight of the evidence claim.

Appellant's Concise Statement of Errors Complained of on Appeal, 3/26/14, at 5. Appellant only indirectly refers to the exclusion of evidence as a supporting argument for her main claim—that Officer Floyd was not credible. Accordingly, we agree with the Commonwealth that this issue is waived. **See** Pa.R.A.P. 1925(b)(4)(vii); Commonwealth's Brief at 13-14.

Second, Appellant alleges that between the affidavit of probable cause accompanying the criminal complaint and the suppression hearing, Officer Floyd made inconsistent statements as to when he placed her under arrest. Appellant fails to cite the place in the record where the alleged inconsistent statements were presented to the jury at **trial**. **See** Pa.R.A.P. 2117(c) (requiring statement of case to specify state of proceedings at which issue sought to be reviewed on appeal was raised), 2119(e) (requiring same of argument section of appellate brief). Nevertheless, this Court has gleaned the following.

On appeal, Appellant cites the following statement in the affidavit of probable cause: "[Appellant] stated that if I continued to yell at [her,] she would file harassment charges. I then did inform [her she] was under arrest." Appellant's Brief at 18. This passage was read aloud at trial by Officer Floyd. N.T. Trial at 128-29.

Appellant also cites Officer Floyd's testimony at page 55 of the suppression hearing transcript. Her appellate brief omits some of the testimony; we set forth the complete passage, emphasizing the part missing

in Appellant's brief:

> [Appellant] said, I'm not going in my car, I'm going back into Coney Island. **So that's when I said, you know what, get in Coney Island,** get out of here. [She] continued to run [her] mouth, you don't know who you're messing with, blah, blah, blah, blah, blah, blah, blah. I said, at this point, you know what, you're under arrest.

**See** N.T. Suppression H'rg, 1/17/13, at 55 (emphasis added). Appellant next claims Officer Floyd "contradict[ed] himself a few questions later" with this testimony:

> . . . I looked at Coney Island, there was a large crowd of people, and [Appellant] was somewhat agitated. So at this point I made the decision that I cannot let [her] go into Coney Island. At that point, I told [her she was] under arrest and needed to stop."

Appellant's Brief at 18 (quoting N.T. Suppression H'rg at 56).

Our review of the trial transcript, however, reveals that neither of the suppression hearing passages was presented to the jury at trial. Accordingly, Appellant's premise is incorrect; the jury did not hear the above suppression hearing testimony and thus any weight of the evidence challenge cannot be based on these statements.

Appellant's next argument in her weight of the evidence challenge is that "[t]he greater weight of the evidence shows that [her] acts and omissions . . . were justified for purposes of 18 Pa.C.S. § [5]503," as "she could tell [Officer Floyd] was in an agitated state based on his conduct and words." Appellant's Brief at 20. Appellant avers she walked away from Officer Floyd, but "he continued to harass and follow her towards the

entrance of Coney Island," and therefore her "actions were justified . . . because she was not the person who initiated the contact nor did she want it." *Id.* Appellant's next claim is that she was "unduly influenced not to testify," and thus the jury only heard "the testimony of Officer Floyd, in which he painted [her] in a very negative light." *Id.* We find no relief due.

The jury heard the evidence presented and was free to believe all, part, or none of it. *See Olsen*, 82 A.3d at 1049. We thus also reject any claim based on Appellant's account of the incident; as stated above, we cannot consider any alleged fact not included in the certified record. *See* Pa.R.A.P. 1921, *note*. For all the foregoing reasons, we find no relief due on Appellant's weight of the evidence claim.

Appellant's third issue on appeal is whether the trial court should "have granted a new trial due to ineffective assistance of counsel." Appellant's Brief at 21. She avers "[t]he following arguments were made in [her] Concise Statements of Errors Complained of on Appeal" and "have considerable merit." *Id.* Appellant asserts trial counsel (1) unduly influenced her not to testify, despite her repeated statements that she wished to testify; (2) failed to investigate and subpoena certain witnesses about the alleged destruction or concealment of a videotape of the incident; and (3) failed to impeach two Commonwealth witnesses.

We hold this issue is waived for failure to raise it before the trial

court.[9]  *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").  Furthermore, a claim of ineffective assistance of counsel should generally be deferred to collateral review under the Post Conviction Relief Act[10] ("PCRA").  *Commonwealth v. Holmes*, 79 A.3d 562, 563 (Pa. 2013).  We note that Appellant may be precluded from PCRA review because of her relatively short sentence.[11]  *See* 42 Pa.C.S. § 9543(a)(1)(i) (stating that to be eligible for PCRA relief, petitioner must be currently serving sentence of imprisonment, probation or parole at time relief is granted).  Nevertheless, the Pennsylvania Supreme Court clearly held that any review of a ineffectiveness claim before collateral review is within the trial court's discretion.  *Holmes*, 79 A.3d at 563 ("[W]e appreciate that there may be extraordinary circumstances where a discrete claim . . . of trial counsel ineffectiveness is apparent from the record and meritorious to the extent

---

[9] As stated above, Appellant raised the ineffectiveness claim for the first time in her Rule 1925(b) statement.  However, this inclusion does not preserve the issue for appeal, as at that point, the trial court had lost jurisdiction to hear any new claim or enter relief.  *See* Pa.R.A.P. 1701(a) (stating general rule that after appeal is taken, trial court may no longer proceed further in matter).

[10] 42 Pa.C.S. §§ 9541-9546.

[11] On December 17, 2013, the court imposed a maximum sentence of twelve months' imprisonment with immediate probation and a concurrent term of twelve months' probation.  **Assuming** Appellant has not violated her probation or parole, the sentence would have expired on December 17, 2014.

that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.").[12] Here, the court was not presented with any proper claim of ineffectiveness.

Appellant's final issue on appeal is a challenge to the discretionary aspects of her sentence. She first avers her sentence, which is in the aggravated range, is manifestly excessive. She maintains the suggested guideline ranges for both resisting arrest and disorderly conduct is twenty-five to fifty hours' community service, and she received sentences of three days to twelve months' imprisonment and twelve months' probation. Appellant alleges the court based the sentence on "incorrect[ ] facts," acted with bias, "had no justifiable or reasonable basis to sentence . . . outside the guidelines," and "abus[ed] his authority to 'punish and humiliate' her." Appellant's Brief at 26. She further challenges the trial court's statement that it was imposing three days' imprisonment as a "reality check" for her. *Id.* We find no relief is due.

We first consider whether Appellant has preserved her issue. This Court has stated:

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of

---

[12] We emphasize we offer no opinion as to whether Appellant has a meritorious ineffectiveness claim.

- 18 -

appeal with respect to the discretionary aspects of sentence [*see* Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Antidormi***, 84 A.3d 736, 759 (Pa. Super. 2014) (some citations omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014). This Court has held "an allegation of bias in sentencing implicates the fundamental norms underlying sentencing and . . . raises a substantial question." ***Commonwealth v. Corley***, 31 A.3d 293, 297 (Pa. Super. 2011).

Here, Appellant has filed a timely notice of appeal and preserved her claim in the post-sentence motion. ***See Antidormi***, 84 A.3d at 759. In her appellate brief, Appellant includes the heading, "Statement of the Reasons to Allow an Appeal to Challenge the Discretionary Aspects of a Sentence." Appellant's Brief at 23. However, there is no separate Pa.R.A.P. 2119(f) statement, and instead Appellant includes only her argument. ***See*** Pa.R.A.P. 2119(f). Nevertheless, the Commonwealth has not objected to the lack of a Rule 2119(f) statement, and thus we will not find waiver on this basis. ***See Antidormi***, 84 A.3d at 759. Finally, Appellant's claim that the court acted with bias raises a substantial question. ***See Corley***, 31 A.3d at 297. Accordingly, we proceed to the merits of Appellant's claim.

This Court has stated:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed

on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Antidormi*, 84 A.3d at 760 (citation omitted).

Appellant acknowledges the trial court's statement of why it imposed a sentence in the aggravated range. Appellant's Brief at 25. The court reviewed the pre-sentence investigation report and the sentencing guidelines. N.T. Sentencing, 12/17/13, at 11; Trial Ct. Op. at 3. At sentencing, Appellant maintained her innocence. N.T. Sentencing at 5, 14-15. The court cited "unusual factors in this case," including its dismissal of some of the charges based on the Commonwealth's failure to sustain its burden of proof. *Id.* at 6. The court also considered Officer Floyd's "attitude" and "unprofessional statement," and acknowledged the officer's comment "may have been a reason for [Appellant's] actions," "[b]ut it's not a justification." *Id.* at 6-7; *see also id.* at 12 ("I'm not here to make excuses for the police officer's behavior or actions. I told you I think it's wrong. It's unprofessional."). The court found, "In any event, the case went to trial, and the jury made [its] decision," and "the fact remains that the jury did find [Appellant] guilty of the two charges." *Id.* at 6.

The court also stated, "[T]hrough all of the pretrial discussions and the suppression hearings, and all the other court dates and interaction that I had

with [Appellant's] attorney, I never saw any remorse or contrition for what happened here." *Id.* at 7; *see also id.* at 16. The court conceded this matter

> wasn't the crime of the century, but depending on . . . what part of the testimonies you take, we had a St. Patrick's Day evening[,] anywhere from 30 to 70 people that were obviously under the influence of alcohol or some other substance[, and] testimony that people were banging on the windows of the Coney Island Restaurant. I think we had maybe four or five police officers, and the part that got me the most was this. [Daniel Hockenberry, who] hadn't been drinking said he saw all of this commotion[ and] the people up against the wall. He wanted to go to the Coney Island, so he took a path around the commotion and went into the Coney Island.
>
> If [Appellant] had done that, we wouldn't be here today.

*Id.* at 7. The court addressed Appellant:

> But you chose to go right into the middle of the fray when the police officers had three or four people up against the wall. And as I recall, . . . one of [those] people [had] a deadly weapon[, a knife.[13]] So we had a near riot situation, and instead of respecting the police, and respecting the situation, you aggravated the situation. So for those reason, I am going to go outside of the standard range.
>
> *      *      *
>
> [M]y departure is based on my conclusion that your conduct is different from the conduct of a defendant usually convicted of these two charges, the resisting arrest and the disorderly conduct. Other people avoided this confrontation.

---

[13] N.T. Trial at 41, 52.

> This could have been a very, very, very—it was a very volatile situation, and it could have exploded. And quite frankly, . . . the police officers didn't have the manpower to control it if it would have gone the other way. . . .

*Id.* at 8-9; *see also* Trial Ct. Op. at 4 (citing court's rationale at sentencing hearing).

The court also stated its reason for its sentence, which included three days' imprisonment: "I think, in my experience, that you need a reality check with your view relative to authority and how you act in society. I'm hoping that this three days does it. If it does, fine. If it doesn't, it doesn't." N.T. Sentencing at 17.

In light of the court's thorough explanation for its sentence, we disagree with Appellant that it abused its discretion or acted with bias.[14]

---

[14] Appellant further argues the court acted with bias post-sentencing. For context, we note that at the December 17, 2013 sentencing hearing, the court directed Appellant to report to prison on December 20th at 9:00 a.m., and stated she would be released on December 23rd. N.T. Sentencing at 17. On appeal, Appellant avers (1) on the day after the sentencing hearing, she was admitted to the hospital "for MRSA;" (2) the court "wanted to make sure she would be in jail during Christmas" and ordered her to report to jail within two hours of discharge; (3) she was discharged on December 23rd but did not report to prison because because her doctor instructed her "not to report to work or school until seen by the specialist because her incision could still be contagious and the dressing needed to be changed daily," and because she wanted to consult with her attorney; and (4) the court "wanted her to spend Christmas in jail no matter what the consequences were" and issued a bench warrant. Appellant's Brief at 26-27. Appellant further asserts she reported to prison on December 26th, and the following day, the court: (1) denied her motion for bond pending appeal; and (2) sentenced her to serve an additional four days for violating the court order, "which fell over the New Year's holiday." *Id.*; *see* Order, 12/27/13. Finally, Appellant directs this Court's attention to a news article on the internet allegedly about

*See Antidormi*, 84 A.3d at 760. Instead, it considered Appellant's pre-sentence investigation report—which indicated she had no prior record—the sentencing guidelines, and the facts of this case. We reject her claim that the court was "not permitted to legally give 'reality check' jail sentences based on personal bias." *See* Appellant's Brief at 26. Instead, the court had authority to act under Sections 9721(b) and 9725(b) of the Sentencing Code. *See* 42 Pa.C.S. §§ 9721(b) (providing that when selecting from sentencing alternatives, court shall follow general principle that sentence should call for confinement that is consistent with defendant's rehabilitative needs), 9725(b) (stating court shall impose total confinement if, having regard to nature and circumstances of crime and defendant's character, defendant is in need of correctional treatment that can be provided most effectively by commitment to institution). Accordingly, we find no relief is due.

Judgment of sentence affirmed.

---

the trial judge "allow[ing] a rapist out of jail for 5-6 days to treat a skin infection, which did not require him to be hospitalized." Appellant's Brief at 27.

We find all of the above claims waived, as Appellant did not raise them before the trial court. *See* Pa.R.A.P. 302(a).

J. S17006/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2015